```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION


UNITED STATES OF AMERICA, CASE NO: 8:10-CR-535-T-26TBM


          Plaintiff,

VS.                                    Tampa, Florida
                                       June 10, 2011
ERNEST BLANCO, JR. and                 10:18 a.m.

          Defendant.
_____/


               TRANSCRIPT OF SENTENCING HEARING
            BEFORE THE HONORABLE RICHARD A. LAZZARA
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

Counsel for Plaintiff:    JEFFREY S. DOWNING, ESQUIRE
                          U. S. Attorney's Office
                          400 N. Tampa Street
                          Suite 3200
                          Tampa, Florida  33602
                          (813)274-6000
                          jeff.downing@usdoj.gov


Counsel for Defendant:    MS. MARY MILLS
                          Federal Public Defender's Office
                          400 N. Tampa Street
                          Suite 2700
                          Tampa, Florida  33602-4726
                          (813)228-2715
                          mary_mills@fd.org


Court Reporter:           CLAUDIA SPANGLER-FRY, RPR, CM
                          Official Court Reporter
                          801 North Florida Avenue
                          15th Floor
                          Tampa, Florida  33602
                          (813)301-5575
                          cookiefry@aol.com

         CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER
```

1           P R O C E E D I N G S

2              June 10, 2011

3                * * * * *

4       THE COURT:  Call the next case, please.

5       THE CLERK:  Yes, Your Honor.

6       The case now before this Court is Case Number
7  8:10-Criminal-535-T-26TBM, United States of America versus
8  Ernest Blanco, Jr.

9       Counsel, please state your appearances.

10      MR. DOWNING:  Jeff Downing for the United States.

11      MS. MILLS:  Mary Mills for Mr. Blanco.

12      THE COURT:  Mr. Blanco, please stand and be sworn by
13  the Clerk.

14  Thereupon,

15                ERNEST BLANCO, JR.,
16  having first been duly sworn to tell the truth, the whole
17  truth, and nothing but the truth, was examined and testified as
18  follows:

19      THE DEFENDANT:  I affirm.

20      THE COURT:  Have a seat.  I have pending before me a
21  motion to withdraw filed by Ms. Mills.  Mr. Blanco, I want to
22  hear that motion now.  I'm going to remind you, you're under
23  oath, so you better be very truthful with me.

24      THE DEFENDANT: Yes, sir.

25      THE COURT:  Now, I've also received from you various

1  motions wanting me to dismiss Ms. Mills.  Now, tell me what the
2  problem is.
3           THE DEFENDANT:  Yes, sir.  From the beginning with
4  Ms. Mills, I've been trying to explain to her the situation
5  with Ray Alexander, Jr., and I haven't felt, you know, that she
6  wants to represent me properly like I asked her to, you know,
7  and --
8           THE COURT:  You pled guilty.
9           THE DEFENDANT:  Sir?
10          THE COURT:  You came before me under oath and you pled
11 guilty in this case, did you not?
12          THE DEFENDANT:  Yes, I did, but I didn't want to, sir,
13 I didn't want to.
14          THE COURT:  You're under oath, okay?
15          THE DEFENDANT:  Yes.
16          THE COURT:  Because this young lady, this Court
17 Reporter, transcribed that and -- excuse me.
18          THE DEFENDANT:  Yes, sir.
19          THE COURT:  And I make sure that when anybody pleads
20 guilty in front of me that they've done so freely, voluntarily,
21 knowingly and intelligently without fear of inducement, without
22 fear of coercion, or anything else, and I did that in your
23 case.
24          THE DEFENDANT:  Yes, sir.  I wrote down everything,
25 and I wanted to read it to you, sir.

1            THE COURT:  Go ahead.

2            THE DEFENDANT:  Thank you, sir.  That's my wife that
3   just came in, okay.

4            First thing I say, good morning, Your Honor.  From the
5   beginning, I perceived such a great misunderstanding because of
6   this conspiracy going on.  When I got arrested, law enforcement
7   in Dade City, ATF, Special Agent Estevan thought I was involved
8   with Ray Alexander's criminal activities.  I understand Ray
9   Alexander, Jr., had falsely told law enforcement in Dade City
10  that I was involved.  He lied to them, and he got caught lying
11  because I was in Tampa at St. Joseph's Hospital.

12           Then he said it was his cousin, then he said it was
13  other friends.  He lied two times.  However, all this
14  originated from Ray Alexander, Jr. because of the sexual
15  assault and molestation that he committed on my granddaughter
16  that he was arrested for on July 29th, 2009.

17           He obtained a private counsel and was released.
18  Within 30 days, he was released.  Immediately, immediately he
19  began his threatenings and intimidations to me and my family
20  and my wife.  We were aware that he had a bad vindictive
21  spirit.  He mentioned that he would have my parole violated and
22  get me out of the way.  Then he acted apologetic around us like
23  he was, you know, sorry, and he said he was going to do the
24  right thing.  He even went to church with us one time.  We
25  forgave him and we prayed for him.

1              It was such a surprise to learn that Mr. Ray
2    Alexander, Jr. has been deceiving us all the time, selling guns
3    to an ATF agent since October 29th, 2009, up to May 26, 2010,
4    at which time Ray Alexander and Agent Estevan together created
5    a substantial risk for me, and my resistance was overcome.  I
6    thought it best to write my counsel a 20-page letter to better
7    help her, to help her, you know, to prepare for jury trial.
8    With the assistance --
9              THE COURT:  You want to go to trial?
10             THE DEFENDANT:  Yes, sir.
11             THE COURT:  Is he the undercover agent?
12             MR. DOWNING:  Yes, Your Honor.
13             THE DEFENDANT:  Yes, sir.
14             THE COURT:  Did you deal with this man face-to-face.
15             THE DEFENDANT:  No.
16             THE AGENT:  Yes, Your Honor, it was an undercover
17   apartment with video and audio which has been shown in
18   discovery and also Mr. Alexander was present, also, and he's
19   also willing to testify.
20             THE COURT:  Did you deal with him face-to-face.
21             THE DEFENDANT:  I really didn't deal with him, I seen
22   him at that apartment.
23             THE COURT:  Okay.
24             You just happened to bring in a dresser full of
25   firearms?

1             THE DEFENDANT:  A sealed dresser.  I knew it was
2    firearms in there when Ray Alexander opened the back of it
3    inside the apartment.
4             THE COURT:  Okay.
5             THE DEFENDANT:  That's when everything hit the fan.
6             THE COURT:  Have you seen the video, Ms. Mills?
7             MS. MILLS:  I have, Judge, multiple times, and we've
8    shown it to Mr. Blanco on multiple occasions.
9             THE COURT:  What does it reflect?
10            MS. MILLS:  The video reflects Mr. Blanco bringing a
11   dresser into the apartment on a hand cart, and then he and
12   Mr. Alexander unload the guns from the dresser and Mr. Blanco
13   has the guns, five or six of the guns that he's bringing out of
14   the dresser and he's touching them, possessing them.  And I
15   have explained that to Mr. Blanco, explained that he doesn't
16   have to actually have owned the firearms, that all he has to do
17   is to touch them to be a felon in possession of a firearm.
18   I've explained that over and over to Mr. Blanco.
19            THE COURT:  Is that true?
20            THE DEFENDANT:  Yes, Your Honor.  But I explained to
21   her my defenses and she --
22            THE COURT:  What's your defense?
23            THE DEFENDANT:  Well, I gave her three different
24   defenses, sir.
25            THE COURT:  Tell me about it.

1              THE DEFENDANT:  Okay.
2              One was entrapment by the ATF agent and Ray Alexander.
3              THE COURT:  Okay.
4              First of all, Mr. Alexander is not an agent of the
5    State at that time.
6              THE COURT:  Excuse me.
7              THE DEFENDANT:  No, no --
8              THE COURT:  Excuse me -- at that time, therefore,
9    entrapment doesn't apply to him.
10             THE DEFENDANT:  Okay.
11             THE COURT:  What's the other defense?
12             THE DEFENDANT:  And the duress that I was in and the
13   necessity that I was in when I seen --
14             THE COURT:  Necessity is not a defense.
15             THE DEFENDANT:  When I seen those guns, I seen those
16   guns, Your Honor, I had not touched no guns.  There's no
17   fingerprints -- my fingerprints are not on those guns, okay.
18   What they have --
19             THE COURT:  You know what you are; you're a con man
20   from way back.
21             THE DEFENDANT:  No, sir, no, sir.
22             THE COURT:  Should we take him to trial, Mr. Downing?
23             MR. DOWNING:  Judge, I honestly don't care.  We're
24   prepared -- we're prepared to go forward today with the
25   sentencing.  If the Court wants to --

1  THE COURT: No, I'm not saying -- no, no, listen.
2  Refresh my memory, did I do what I always do? Did I ask him to
3  read the factual basis in the plea agreement?
4  MR. DOWNING: Judge, it was a very, very thorough
5  guilty plea proceeding, it is the most thorough guilty plea
6  proceeding in this building.
7  THE COURT: Did I ask him that question?
8  MS. MILLS: Yes, Judge.
9  THE COURT: Did he say --
10  THE DEFENDANT: I didn't read the facts.
11  MS. MILLS: Judge, he read the facts, we went over the
12  facts.
13  THE COURT: Listen, listen, don't make me -- Cookie,
14  how long will it take you to pull up this plea colloquy, even
15  if it's in rough form?
16  (Sidebar discussion with the Court and the Court
17  Reporter.)
18  THE DEFENDANT: Your Honor, can I --
19  THE COURT: No, no, no, no, no, no.
20  THE DEFENDANT: I wanted to ask you something.
21  THE COURT: We're coming back here. I don't have my
22  -- I hate to hold everybody up, my next thing is at 11:30.
23  We're going to come back here at ten to 11. And it doesn't
24  have to be perfect, Ms. Fry, I want to get a feel for what that
25  colloquy was or what I asked him,

1        THE DEFENDANT: Your Honor.

2        THE COURT: No, sir, we're going off the bench. Give
3 her a chance.

4        (Brief recess.)

5        Have a seat. I've received a 43-page rough transcript
6 of the plea proceedings that I conducted with Mr. Alexander and
7 Mr. Blanco on March 29th of this year. It follows my standard
8 procedure where I advised him, Mr. Blanco and Mr. Alexander, of
9 the importance of the proceeding. I assured myself that they
10 were alert, comprehending. I impressed upon them the fact that
11 should they be untruthful with me in any respect, that they
12 could be prosecuted for making a false statement in a separate
13 proceeding and any false statement could be used against them
14 in that separate proceeding. I received their assurance that
15 they would, in fact, answer each and every one of my questions
16 truthfully and completely.

17        I advised them that they continue to have the right to
18 consult with counsel, all they had to do was let me know that
19 fact and I'd let them consult. I explained to them, in detail,
20 the provisions of the plea agreement and how those provisions
21 would affect them. I received their assurances, especially
22 Mr. Blanco, that he was fully and completely satisfied with the
23 advice and representation that Ms. Mills had given him and that
24 she had done everything he had asked of her.

25        I will admit that there was some equivocation on his

1  part when it came time to plead guilty, but after further
2  reflection, he, in fact, admitted his guilt to me.  I asked him
3  to read -- let me find it here.
4          I also assured myself that no promises had been made
5  to him to induce him to plead guilty, specifically with regard
6  to what sentence I would impose, how much time he'd have to
7  serve in prison, and he specifically assured me that no threats
8  or coercion had been practiced upon him by -- on him or his
9  family and any family member by his lawyer or any
10 representative of the Government.
11         And, of course, there was a discussion as to whether
12 he would, in fact, qualify as an armed career criminal in view
13 of his escape convictions and in preparation for that, and I
14 know that Ms. Mills apparently didn't get to the process of
15 objecting, but, you know, on my own, I note that the Eleventh
16 Circuit Court of Appeals back in April of this year in United
17 States versus Proch, P-R-O-C-H, 637 Fed. 3d., 1262, did say
18 that escape from custody under Florida Law qualifies as a
19 violent felony under the Armed Career Criminal Act.
20         Of course, there's an issue about Shepherd-related
21 documents and things like that, so I have a feeling we'll have
22 to deal with that later.  But in any event, I assiduously
23 explained to them the rights that they had, the rights that
24 they were giving up by pleading guilty, and after his
25 equivocation, then I asked Mr. Blanco if he -- I explained to

1  him what he was charged with doing in the Indictment, I
2  explained to him the elements that the Government would have to
3  prove beyond a reasonable doubt before a jury of 12 people
4  could unanimously convict him of those offenses.
5       And then I asked him, you know, how do you want to
6  plead, and he said, guilty, and I said, I want you to go to
7  page 14 of your plea agreement over to page 15 and 16.  I
8  pointed out that's where the Government sets out the facts it
9  says it can prove to a jury beyond a reasonable doubt in your
10 case, and have you gone over those facts carefully, and he
11 replied, yes, sir.
12      And I asked him, do those facts accurately and
13 correctly reflect what you did in this case, and he said, yes,
14 sir.  And I said, do you dispute or contest any of those facts,
15 no, sir.  And then there's a discussion about the audio and --
16 well, I asked a question of Mr. Downing about the audio
17 reflecting him receiving $2,000 in cash from an ATF agent.
18 Mr. Downing says, not only the audio, the video, and he tells
19 me what's on the video.
20      He says there's a video of Mr. Alexander and
21 Mr. Blanco bringing in a dresser, opening it up and then the
22 guns are handed by Mr. Alexander and Mr. Blanco to the
23 undercover agent.  That's on video, and one of the undercover
24 agents are actually there, of course, this is rough, one of
25 them handed money to Mr. Alexander who handed the money to

1  Mr. Blanco.

2          I asked Mr. Blanco, is that what happened, and
3  Mr. Blanco, yes, sir.  Have you seen the video?  Yes, sir.
4  Have you listened to the audio?  Yes, sir.  And is it an
5  accurate depiction of what you did in this case?  Yes, sir.
6  Then I satisfy myself he's understood each and every one of my
7  questions.  He said, everything is all right.

8          I asked him, you comprehend everything.  Yes, sir.
9  You want to take a moment to discuss anything with Ms. Mills?
10 No, sir.  You want to ask me any questions?  No, sir.  Of
11 course, the plea agreement is in the Pre-Sentence Report, and,
12 of course, it's filed of record, and the factual basis is very
13 detailed as to what he did in this case, more than sufficient
14 to prove his guilt beyond a reasonable doubt to a jury.

15         I'm not going to ask you any questions, Mr. Blanco,
16 out of an abundance of caution because as I advised you, any
17 false statement you made to me during that proceeding could be
18 used against you.  I'm not going to have you incriminate
19 yourself here today by denying or anything like that, saying,
20 that's not -- I may have said that, but it wasn't true, so you
21 just keep quiet.  All right.

22         It's very rare that I allow an attorney to withdraw
23 based on baseless allegations of ineffective assistance of
24 counsel in my Court, but I'm going to do this in this case, not
25 for the benefit of Mr. Blanco, but for the benefit of Ms. Mills

1 who -- how long have we been associated together professionally
2 in this Courtroom?
3        MS. MILLS:  Over 10 years, Judge.
4        THE COURT:  Over 10 years.  She's tried many cases
5 here's, she's represented many Defendants in sentencing
6 proceedings, she's always done an excellent job.  And there's
7 no reason for me to waste her time and the resources of her
8 office representing an ungrateful Defendant when she has many
9 other clients that she needs to take care of.
10        So again, I'm going to grant her motion to withdraw
11 for her benefit, not the benefit of Mr. Blanco.  I understand
12 you filed bar grievances against her, Mr. Blanco.  In my
13 considered opinion, those bar grievances are frivolous and,
14 Ms. Mills, if you need any help with regard to answering those
15 bar grievances from me, you let me know.
16        MS. MILLS:  Thank you, Judge.
17        THE COURT:  I'd be more than happy.
18        I'm satisfied there is absolutely no basis whatsoever
19 to allow him to withdraw his plea of guilty, even if someone
20 filed a motion, so we're going to proceed to sentencing on
21 another date.
22        The Magistrate Judge in this case is Judge McCoun.  I
23 know he's, from previous communications with him, he's in
24 Atlanta this week attending the wedding of a family member, but
25 I will have my Courtroom Clerk communicate with his Deputy

1  Courtroom Clerk about assigning CJA counsel to represent
2  Mr. Blanco in terms of his sentencing.
3       And I guess there -- like I said, there may be -- it's
4  just too bad, Ms. Mills is very, very good with regard to
5  whether an offense does or does not qualify for enhancement
6  purposes, a prior offense, you know, and there's --
7  notwithstanding this Eleventh Circuit's opinion, you know,
8  there may be instances where the escape statute doesn't apply,
9  I don't know.  It's become a very, very tricky, if you will,
10 area of the law, but I know her and she's argued that position
11 well to me on many occasions, so you have -- it's to your
12 detriment that she's no longer your lawyer, but that's the
13 decision you wanted to make.
14      Do me a favor, don't file anymore motions with me.
15 You're going to have a lawyer, you let your lawyer communicate
16 with me and the Government do the filing of pleadings.
17      So again, I'll grant the motion to withdraw, not for
18 his benefit because I do not find that in any respect Ms. Mills
19 has rendered ineffective assistance of counsel to him.  It's to
20 her benefit and the benefit of her office I'm doing that.  All
21 right.
22      Like I said, he'll probably have to wail till next
23 week to have counsel appointed to represent him.  The PSR has
24 been done, I assume you will communicate with the other lawyer
25 when he or she is appointed and --

1    MS. MILLS:  I will.

2    THE COURT:  -- and fill them in.

3    MS. MILLS:  I'll make sure they get all of the
4  documents and the discovery and everything.

5    THE COURT:  Okay.  So let's go ahead and out of an
6  abundance of caution with due respect to the rights of
7  Mr. Blanco, he still has rights here, that is to due process
8  and representation of counsel in this sentencing proceeding,
9  let's go ahead and set this 60 days off, Madam Clerk.

10   THE CLERK:  It will be August 12th, Your Honor, at
11 9:30.

12   THE COURT:  All right.

13   August 12th at 9:30.

14   MS. MILLS:  And Judge, just for the record, you said
15 August 20th?

16   THE COURT:  No, August 12th.

17   MS. MILLS:  The 12th, just for the record, Judge, I'm
18 -- in case there was any wish for Mr. Blanco receiving a copy
19 of his latest PSR, I'm handing a copy of that to him right now.

20   THE COURT:  All right.  Okay.

21   MS. MILLS:  Thank you, Judge.

22   THE COURT:  Thank you.

23   (Thereupon, the proceedings concluded.)

24                        *******

25

CERTIFICATE

STATE OF FLORIDA         )
                         SS
COUNTY OF HILLSBOROUGH   )

I, CLAUDIA SPANGLER-FRY, Official Court Reporter for the United States District Court, Middle District, Tampa, Division,

DO HEREBY CERTIFY, that I was authorized to and did, through use of Computer Aided Transcription, report in shorthand the proceedings and evidence in the above-styled cause, as stated in the caption hereto, and that the foregoing pages numbered 1 to 16 inclusive, constitute a true and correct transcription of my shorthand report of said proceedings and evidence.

IN WITNESS WHEREOF, I have hereunto set my hand in the City of Tampa, County of Hillsborough, State of Florida, this 12th day of October, 2011.

CLAUDIA SPANGLER-FRY, Official Court Reporter

BY:  /s/ CLAUDIA SPANGLER-FRY